UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCHOLASTIC INC., <br><br> Plaintiff, <br><br> vs. <br><br> ST. PAUL FIRE AND MARINE INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. 1:23-cv-03485-JMF <br><br> **SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND** |

**COMPLAINT**

Scholastic Inc. ("Scholastic"), by and through its undersigned counsel, files this Complaint against Defendant St. Paul Fire and Marine Insurance Company ("Travelers") and alleges as follows:

**PRELIMINARY STATEMENT**

1. This action arises out of Travelers' failure and refusal to honor its obligations under the Specialty Commercial Umbrella Liability Policy that Travelers sold to Scholastic (the "Travelers Policy"), including the Professional Liability Endorsement contained therein.

2. Scholastic is a publisher and distributor of children's books. Scholastic also is a developer and producer of software as well as educational and entertaining children's media.

3. Travelers sold Scholastic professional liability insurance intended to protect Scholastic from claims related to Scholastic's rendering of its professional services, including but not limited to professional services as a publisher and developer of educational

material.  The Travelers Policy provides professional liability coverage to Scholastic in excess of primary coverage provided by Illinois National Insurance Company ("AIG").[1]

4. On January 16, 2018, Vanderbilt University ("Vanderbilt") commenced an action against Scholastic in the United States District Court for the Middle District of Tennessee styled *Vanderbilt University v. Scholastic, Inc., et al*, Civil Action No. 3:18-cv-0046 (the "Vanderbilt Action"), which included allegations that triggered the duty to defend and indemnify under the professional liability coverage Scholastic purchased from AIG and Travelers.

5. Scholastic timely tendered its claim for coverage to both AIG and Travelers.

6. AIG promptly and correctly acknowledged its duty to pay Scholastic's defense costs in the Vanderbilt Action.  In August of 2021, AIG exhausted its $10,000,000 policy limits by paying a portion of the settlement of the Vanderbilt Action.

7. Once the AIG primary insurance limits were exhausted, Scholastic sought from Travelers reimbursement for the outstanding Vanderbilt Action defense costs and settlement amounts that AIG agreed were covered.

8. The outstanding amounts owed to Scholastic include $13,357,860 for the settlement of the Vanderbilt Action, and approximately $960,000 in outstanding defense costs incurred from the fourth quarter of 2020 to September 2021.

9. Travelers wrongfully refused to reimburse Scholastic for these amounts, thereby breaching the Travelers Policy.

---

[1] AIG Claims, Inc. ("AIG") is the authorized representative of Illinois National Insurance Company, which sold the underlying Multimedia Professional Liability Policy to Scholastic.

10. Travelers' wrongful denial has forced Scholastic to prosecute this action to obtain the insurance coverage that Scholastic paid for, and that Travelers owes to Scholastic under the Travelers Policy.

11. Accordingly, Scholastic requests that judgment be entered in Scholastic's favor, granting: (a) a declaration that Travelers must reimburse Scholastic for all the outstanding Vanderbilt Action defense costs and settlement amounts, with interest, under the Travelers Policy; and (b) reimbursement of all fees, costs, and damages that Scholastic has incurred, and continues to incur, with interest, as a result of Travelers' breach of the Travelers Policy.

## **PARTIES**

12. Plaintiff Scholastic is a New York corporation with its principal place of business at 557 Broadway, New York, New York 10012.

13. Upon information and belief, Defendant Travelers is a Connecticut corporation with a principal place of business at One Tower Square, Hartford, Connecticut 06183.

## **JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2). The amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between Scholastic, which is a citizen of New York, and Travelers, which is a citizen of Connecticut.

15. Venue is proper in this Court under 28 U.S.C. § 1391. Travelers has sufficient minimum contacts with the State of New York, and is authorized to issue, and actively issues, insurance policies in this District, including the insurance policy in dispute in this action that was sold to Scholastic; and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

### A. The AIG Primary Policy

16. AIG sold to Scholastic a Multimedia Professional Liability Policy, with Policy No. 01-589-55-94, for the policy period February 28, 2010 – February 28, 2011 (the "AIG Policy"), a copy of which is attached as Exhibit 1.

17. The AIG Policy provides insurance coverage for allegations of wrongful acts against Scholastic. The AIG Policy states:

> We will pay amounts you are legally required to pay to compensate others for damages as a result of one or more claims arising from your wrongful act or that of another for whom you are legally responsible, including liability assumed under contract. The wrongful act must first take place during the policy period and in the performance of the multimedia services provided by the Named Insured and its subsidiaries.

*See* AIG Policy, Ex. 1 Part 1 at Section I.A, PDF p. 11 of 32.

18. The AIG Policy defines "wrongful act" as "any of the following actual or alleged breaches of duty, neglects, errors, misstatements, misleading statements or omissions, including, liability therefor assumed under contract, constituting:

- (a) any form of defamation or other tort related to disparagement or harm to character, reputation, or feelings of any person or organization, including libel, slander, product disparagement, trade libel, infliction of emotional distress, outrage or outrageous conduct;
- (b) any form of invasion, infringement or interference with rights of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial appropriation of name or likeness;
- (c) false arrest, detention or imprisonment or malicious prosecution;
- (d) wrongful entry or eviction, trespass, eavesdropping or other invasion of the right of private occupancy;
- (e) **infringement of title, slogan, trademark, trade name, trade dress, service mark, or service name;**
- (f) infringement of copyright, plagiarism, piracy, or misappropriation of ideas under implied contract, **or other misappropriation of property rights, ideas or information;**
- (g) unfair competition alleged in conjunction with subparagraphs e. or f. above;

4

    (h)    a breach of an agreement to maintain the confidentiality of a source or material furnished by a source; or

    (i)    *prima facie* tort in connection with material."

*See* AIG Policy, Ex. 1 Part 1 at Section III(GG), PDF pp. 18-19 of 32 (emphasis added).

### B. The Travelers Excess Policy

19. Travelers sold to Scholastic the Travelers Policy, with Policy No. QK09002061, for the policy period from February 28, 2010 – February 28, 2011, a copy of which is attached as Exhibit 2.

20. The Travelers Policy provides that Travelers "shall have the right and duty to assume control of the defense of any Claim or Suit seeking damages covered by this policy, and [Travelers] shall have the right to investigate and settle such Claim or Suit, when the Retained Limit has been exhausted by payment of judgments or settlements that would be covered by this policy. These rights and duties apply even if the Claim or Suit is groundless, false or fraudulent." *See* Travelers Policy, Ex. 2 at Insuring Agreement, Section II.A, PDF p. 20 of 60.

21. The Travelers Policy contains a "Professional Liability Endorsement" that provides insurance coverage for allegations of "Professional Liability Loss" against Scholastic, and requires Travelers to defend and indemnify Scholastic against such claims. The Travelers Policy states that Travelers:

> will also pay on behalf of the Insured all sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of Professional Liability Loss that is caused by an Occurrence committed during the Policy Period, but only if:
>
> > 1. insurance for such Professional Liability Loss is provided by any Scheduled Underlying Insurance or any Scheduled Retained Limit and then for no broader coverage than the insurance provided by the Scheduled Underlying Insurance or Scheduled Retained Limit, subject to all exclusions of this policy.

*See* Travelers Policy, Ex. 2 at Professional Liability Endorsement, Section 1, PDF p. 56 of 60.

22. "Occurrence" is defined in the Professional Liability Endorsement to include:

> 4. as respects Professional Liability Loss, a rendering of, or failure to render, any professional service by or on behalf of the Insured which results in Professional Liability Loss. All Professional Liability Loss caused by the same injurious rendering of, or failure to render, a professional service shall be considered to be caused by one Occurrence, regardless of the frequency or repetition thereof or the number of persons or organizations making Claims or bringing Suits.

*See* Travelers Policy, Ex. 2 at Professional Liability Endorsement, Section 4.O.4, PDF p. 57 of 60.

23. "Professional Liability Loss" is defined to mean "loss caused by the rendering of, or failure to render, any professional service by or on behalf of the Insured." *See* Travelers Policy, Ex. 2 at Professional Liability Endorsement, Section 5, PDF p. 57 of 60.

24. The Travelers Policy does not contain a corresponding definition for "Professional Services." *See generally* Travelers Policy, Ex. 2.

25. Scholastic has paid all premiums due under the Travelers Policy, complied with all conditions precedent to coverage under the Travelers Policy, and satisfied all obligations to the extent that they have not been waived or abrogated by Travelers' conduct, omissions, or actions.

## C. The Vanderbilt Action

26. On August 31, 2018, Vanderbilt filed its First Amended Complaint in the Vanderbilt Action (the "Vanderbilt Complaint"), asserting eleven causes of action stemming from Scholastic's and other parties' alleged misuses of Vanderbilt's intellectual property.

27. Vanderbilt alleged, among other things, that after Vanderbilt entered into an agreement with Scholastic to develop Vanderbilt's Peabody Middle School Literacy Program

into the commercially viable *READ 180* program (the "License Agreement"), Scholastic misappropriated Vanderbilt's intellectual property by independently developing, publishing, and/or distributing educational materials that incorporated or were derived from Vanderbilt's intellectual property. Therefore, Vanderbilt contended it was owed royalty payments for these education materials pursuant to the License Agreement. A copy of the Vanderbilt Complaint is attached as Exhibit 3.

28. The educational materials upon which Vanderbilt based its claims included non-software components of the *READ 180* program, such as trade books, teacher guides, teacher training, and cloud storage devices (the "Non-software Components"), and other subsequently developed educational programs such as *FASTT Math*, *System 44*, *iRead*, and *MATH 180* (the "Other Scholastic Products").

29. On May 26, 2021, after all parties in the Vanderbilt Action had filed summary judgment motions, the District Court dismissed all but two claims against Scholastic: Vanderbilt's claims for Breach of Contract in violation of New York law (Count 1); and Infringement of Federally-Registered Trademarks (Count 3). *See* District Court Summary Judgment Decision, at p. 34, a copy of which is attached as Exhibit 4.

30. The Vanderbilt Breach of Contract claim asserted that Scholastic breached the License Agreement between Scholastic and Vanderbilt due to Scholastic's alleged misappropriation of certain Vanderbilt intellectual property that Scholastic used to develop, publish, and/or distribute the Non-Software Components and the Other Scholastic Products. Vanderbilt alleged that the Non-Software Components and Other Scholastic Products incorporated or were derived from Vanderbilt's intellectual property, and therefore allegedly

7

were royalty-bearing under the License Agreement. *See* Vanderbilt Complaint, Ex. 3, at ¶¶ 12-16, 73.

31. The Vanderbilt Trademark Infringement claim asserted that Scholastic infringed on Vanderbilt's federally registered trademarks in the design, development, marketing, advertising, and publishing of the Non-Software Components and the Other Scholastic Products. *See* Vanderbilt Complaint, Ex. 3, at ¶¶ 12-16, 89-91.

32. On July 20, 2021, the Vanderbilt Action parties entered into a Settlement and Release Agreement (the "Vanderbilt Settlement"), which provided that, in consideration for a settlement amount to paid by Scholastic and another party to Vanderbilt, Vanderbilt would stipulate to a dismissal of its Trademark Infringement and Breach of Contract claims against Scholastic and the other party (the "Settled Claims").[2]

33. Scholastic fully communicated the terms of the Vanderbilt Settlement with both AIG and Travelers throughout the negotiation process and prior to making any binding decisions or settlement agreements.

34. After AIG exhausted its limits partially reimbursing Scholastic for the settlement, the remaining settlement amount attributable to Scholastic is $13,357,860, which is in addition to approximately $960,000 in outstanding defense costs incurred from the fourth quarter of 2020 to September 2021.

**D.   Travelers' Wrongful Denial of Coverage**

35. After AIG correctly acknowledged coverage for the Settled Claims and paid its limits, Scholastic properly tendered the Vanderbilt Action to Travelers, and requested

---

[2] The Vanderbilt Settlement does not apportion amounts to each underlying Vanderbilt claim.

reimbursement of the outstanding defense costs and settlement amounts related to the Vanderbilt Action.

36. The Travelers Policy expressly insures Scholastic for claims including allegations of Professional Liability Loss resulting from Scholastic's rendering of Professional Services.  *See* Travelers Policy, Ex. 2, Professional Liability Endorsement.

37. Both Settled Claims asserted in the Vanderbilt Action, Trademark Infringement and Breach of Contract, individually and separately allege Professional Liability Loss caused by Scholastic's rendering of professional services.

38. The Vanderbilt Trademark Infringement Claim alleges that Scholastic's developing, designing, manufacturing, and publishing the Other Scholastic Products infringed on Vanderbilt's trademarks.  *See* Vanderbilt Complaint, Ex. 3, at ¶¶ 60-61, 65, 88-91.

39. The Breach of Contract Claim alleges that Scholastic did not have the right to independently develop, design, manufacture, and publish the Non-Software Components of *READ 180* and the Other Scholastic Products, which Vanderbilt alleged incorporated or were derivative of Vanderbilt's intellectual property, and therefore were royalty-bearing under the License Agreement.  *See* Vanderbilt Complaint, Ex. 3, at ¶¶ 28, 33, 73.

40. The Vanderbilt Action fits squarely within the Travelers Policy's coverage grant.

41. No Travelers Policy exclusion applies to exclude coverage.

42. In correspondence dated October 15, 2021, Travelers refused to pay for the Vanderbilt Settlement.  *See* October 15, 2021 Correspondence, a copy of which is attached as Exhibit 5.  While Travelers requested a mediation to allocate between "damages not covered under the Umbrella Policy, as well as some potentially covered damages," Travelers' later

9

coverage denials demonstrate that Travelers never had any intention of paying anything toward the Vanderbilt Settlement.  *Id.*

43. Scholastic fully informed Travelers of the impending July 20, 2021 Vanderbilt Settlement.  Travelers also knew that AIG was going to exhaust its Policy limits by indemnifying Scholastic for the Vanderbilt Settlement.  And Travelers acknowledged its duty to pay Scholastic's defense costs.  Despite all these facts, Travelers still denied its responsibility to reimburse Scholastic's defense costs incurred before August 26, 2021 (the date that AIG paid the remainder of the AIG Policy limits).  *See id.*  ("Travelers agrees to pay reasonable and necessary defense costs incurred after AIG's August 26, 2021 payment.").

44. Travelers was aware that any defense costs incurred after August 26, 2021 would be negligible because the Vanderbilt Settlement ended the Vanderbilt Action.

45. If Scholastic knew that Travelers would attempt to evade its obligations to pay for Scholastic's defense costs due to AIG's delay in reimbursement, Scholastic could have, prior to AIG's payment, requested AIG to agree to direct its payment toward the outstanding defense bills, with the remaining AIG limits going toward the Vanderbilt Settlement.

46. Both AIG and Travelers acknowledged that Scholastic's defense costs should be paid, and Scholastic would not be forced to bring this action to recover in part the $960,000 in unpaid defense costs but for Travelers' failure to deal with Scholastic in good faith and inform Scholastic of its intended positions on defense costs being incurred to defend the Vanderbilt Action.  Travelers was in a position to prevent this dispute, but instead remained silent.

47. Travelers' sequential denials of its duty to pay Scholastic's defense bills, in addition to the Vanderbilt Settlement amounts, effectively forced Scholastic's hand and made

litigation inevitable.

48. Travelers not only breached its own insurance policy, but it also caused Scholastic to suffer avoidable damages. Now, in addition to being stuck with the defense bills that Travelers acknowledges trigger coverage under the Travelers Policy, Scholastic must prosecute this action to obtain the defense and indemnity to which it is contractually entitled.

49. In correspondence dated March 10, 2022, Scholastic responded to Travelers' improper denial, asserting coverage under the Travelers Professional Liability Endorsement, a copy of which is attached as Exhibit 6.

50. Despite Scholastic's affirmative case for coverage, Travelers reaffirmed its denial on April 19, 2022. Travelers wrongfully argued that the Settled Claims do not trigger coverage under the Professional Liability Endorsement and again refused to pay the outstanding Vanderbilt Action defense costs. *See* April 19, 2022 Correspondence, a copy of which is attached as Exhibit 7.

51. Travelers' denial of its coverage obligations to Scholastic for the Vanderbilt Action under the Travelers Policy has no basis in fact, the law, or the Travelers Policy.

52. Travelers continues to deny its duty to reimburse Scholastic for the defense costs and settlement amounts that Scholastic incurred in the Vanderbilt Action.

53. Scholastic has been harmed and will continue to be harmed by Travelers' wrongful conduct.

54. Scholastic has complied with all obligations and conditions precedent to coverage under the Travelers Policy.

## COUNT I
### Declaratory Judgment

55. Scholastic repeats, realleges, and incorporates all of the allegations set forth in paragraphs 1 – 54 above, as if fully set forth herein.

56. The Travelers Policy constitutes a valid and binding contract between Scholastic and Travelers, the terms and conditions of which were triggered by the Vanderbilt Action and Settlement.

57. Scholastic has performed all of its duties in full compliance with the terms and conditions of the Travelers Policy, and satisfied all obligations to the extent that they have not been waived or abrogated by Travelers' conduct, omissions or actions.

58. Travelers is obligated to reimburse Scholastic for the remaining defense costs and settlement amounts incurred as a result of the Vanderbilt Action, following AIG's proper exhaustion of its policy by paying AIG's full policy limits.

59. The Settled Claims in the Vanderbilt Action allege Professional Liability Loss as a result of Scholastic's rendering of professional services.

60. Despite the Vanderbilt Action and Settlement falling squarely within the Professional Liability Endorsement of the Travelers Policy, Travelers has refused to reimburse Scholastic for defense costs and settlement amounts incurred by Scholastic because of the Vanderbilt Action.

61. No exclusions bar coverage for the Vanderbilt Action.

62. Scholastic has suffered and continues to suffer damages because of Travelers' failure to satisfy its coverage obligations under the Travelers Policy.

63. By reason of the foregoing, an actual and justiciable controversy exists between Scholastic and Travelers with respect to Travelers' duties and obligations to Scholastic

under the Travelers Policy.

64. Scholastic therefore seeks a judicial determination by this Court that the Travelers Policy provides coverage for the Vanderbilt Action, and therefore Travelers must reimburse Scholastic for all outstanding defense costs and settlement amounts incurred in defending and settling the Vanderbilt Action. Such a determination is necessary and appropriate at this time under the circumstances alleged.

65. Scholastic's damages sustained as a result of Travelers' wrongful conduct, in the form of its unreimbursed defense costs, settlement amounts, and attorneys' fees for this coverage action, were within the contemplation of the Parties as the natural probable result of a breach of Travelers' duties at the time Travelers sold the Policy to Scholastic.

66. Travelers knew that as a natural and probable result of Travelers' breach of the Travelers Policy, Scholastic would be compelled to incur litigation fees and costs to enforce its insurance coverage rights for a claim that is covered under the terms of the Travelers Policy. Therefore, Scholastic is entitled to a judicial declaration from this Court that Scholastic is entitled to all fees, including attorneys' fees, and costs of this action (including pre- and post-judgment interest) under the applicable law as consequential damages.

## COUNT II
### Breach of Contract

67. Scholastic repeats, realleges, and incorporates all of the allegations set forth in paragraphs 1 - 66 above, as if fully set forth herein.

68. The Travelers Policy constitutes a valid and binding insurance contract.

69. Scholastic has paid all premiums and complied with all conditions precedent to coverage under the Travelers Policy, and satisfied all obligations to the extent that they have not been waived or abrogated by Travelers' conduct, omissions, or actions.

70. Under the terms of the Travelers Policy, Travelers is obligated to reimburse Scholastic for all outstanding defense costs and settlement amounts incurred by Scholastic because of the Vanderbilt Action, following AIG's proper exhaustion of its policy by paying AIG's full policy limits.

71. No exclusions bar coverage for the Vanderbilt Action.

72. Travelers has refused to reimburse Scholastic for all outstanding defense costs and settlement amounts incurred by Scholastic in the Vanderbilt Action, and therefore has breached its obligations under the Travelers Policy.

73. The Travelers Policy contains an implied promise that Travelers would deal fairly and in good faith with Scholastic and would do nothing to injure, frustrate, or interfere with Scholastic's rights to receive the benefits of the Travelers Policy.

74. The covenant of good faith and fair dealing obligates Travelers to refrain from taking any action that would deprive Scholastic of the benefits of the contract, or to cause undue hardship or harm to Scholastic.

75. Travelers, through its wrongful conduct prior to and following the Vanderbilt Settlement and its baseless denial of coverage, has breached the Travelers Policy's covenant of good faith and fair dealing, implicit in the contract of insurance between Scholastic and Travelers.

76. It is wrongful conduct and a violation of the duty of good faith and fair dealing to require a policyholder to spend significant resources to get an insurance company to pay covered claims.

77. This wrongful conduct also violates Travelers' representations to policyholders and the public at large.

78. Travelers knew that as a natural and probable result of a breach of the Travelers Policy, Scholastic would be compelled to incur litigation fees and costs to enforce its insurance coverage rights for a claim that is covered under the terms of the Travelers Policy.

79. Travelers' breach of the Travelers Policy has caused Scholastic to suffer actual, consequential, and special losses in a substantial amount that is still accruing. As a direct and proximate result of Travelers' breach of the Travelers Policy, Scholastic continues to suffer damages, in an amount to be determined at trial, including but not limited to attorneys' fees and costs, loss of funds, expenses, pre- and post-judgment interest, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Scholastic requests that this Court:

1. Enter a judicial declaration on Count I that Travelers has a duty to defend and indemnify Scholastic under the Travelers Policy for all losses suffered as a result of the Vanderbilt Action, including all outstanding defense costs and settlement amounts;

2. Enter judgment on Count II in favor of Scholastic and against Travelers for actual and consequential damages for breach of contract in an amount to be determined at trial; and

3. On all Counts, enter judgment that Scholastic is entitled to:

   a. Attorneys' fees;

   b. Costs;

   c. Compensatory Damages;

   d. Consequential Damages;

   e. Pre- and Post-Judgment Interest; and

   f. Any and all such further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Scholastic hereby demands trial by jury of any and all issues so triable.

Dated: June 28, 2023
New York, New York

/s/ *Diana Shafter Gliedman*
Diana Shafter Gliedman, Esq.
Cort T. Malone, Esq.
ANDERSON KILL P.C.
1251 Avenue of the Americas
New York, NY 10020-1182
Telephone: (212) 278-1000

*Attorneys for Plaintiff*
*Scholastic, Inc.*