# EXHIBIT 7



WWW.RIVKINRADLER.COM

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000 F 516.357.3333

JOANNE ENGELDRUM
PARTNER
(516) 357-3254
joanne.engeldrum@rivkin.com

April 19, 2022

**VIA ELECTRONIC MAIL**

Cort T. Malone, Esq.
Anderson Kill, P.C.
1251 Avenue of the Americas
New York, New York 10020

   Re: *Vanderbilt University v. Scholastic, Inc.,*
     No. 3:18-cv-00046 (M.D. Tenn.) (the "Vanderbilt Action")
     Travelers' Claim No.: FMS9503 (the "Claim")
     Travelers' Insured: Scholastic Inc. ("Scholastic")
     Travelers' Policy No.: QK09002061 (eff. 2/28/10-2/28/11) (the "Travelers Policy")
     <u>RR File No.:  004584-00490</u>

Dear Mr. Malone:

   As you know, we represent St. Paul Fire and Marine Insurance Company ("Travelers") in connection with the above-referenced matter.  We write in response to your March 10, 2022 letter in which you advise that Scholastic is seeking coverage from Travelers for certain defense costs and its unreimbursed settlement payment in connection with the Vanderbilt Action under the Professional Liability Endorsement of the Travelers Policy, and Scholastic is not seeking coverage under the Advertising Injury coverage of the Travelers Policy as set forth in your January 14, 2022 letter to Chris Newkirk of Travelers.

   At the outset, we acknowledge and accept your confirmation that Scholastic is not seeking Advertising Injury coverage from Travelers.  Indeed, leaving aside whether the claims against Scholastic in the Vanderbilt Action allege covered "advertising injury" or the exclusions apply to preclude coverage, any Advertising Injury coverage under the Travelers Policy (which Travelers denies) would be excess over ACE's Advertising Injury coverage under its Commercial General Liability policy, which has not been exhausted.

   Turning to Scholastic's claim for coverage under the Professional Liability Endorsement of the Travelers Policy, the endorsement provides coverage as follows:

66 South Pearl Street, 11th Floor
Albany, NY 12207-1533
T 518.462.3000 F 518.462.4199

25 Main Street
Court Plaza North, Suite 501
Hackensack, NJ 07601-7082
T 201.287.2460 F 201.489.0495

477 Madison Avenue
New York, NY 10022-5843
T 212.455.9555 F 212.687.9044

2649 South Road
Poughkeepsie, NY 12601-6843
T 845.473.8100 F 845.473.8777

RIVKIN RADLER LLP

Cort T. Malone
April 19, 2022
Page 2

We will also pay on behalf of the **Insured** all sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Professional Liability Loss** that is caused by an **Occurrence** committed during the **Policy Period**, but only if:

1.  insurance for such Professional Liability Loss is provided by any Scheduled Underlying Insurance or any Scheduled Retained Limit and then ***for no broader coverage*** than the insurance provided by the Scheduled Underlying Insurance or Scheduled Retained Limit, subject to all exclusions of this policy; . . . . (emphasis added)

"Occurrence" is defined in the Professional Liability Endorsement to include:

4.  as respects **Professional Liability Loss**, a rendering of, or failure to render, any professional service by or on behalf of the **Insured** which results in **Professional Liability Loss**. All **Professional Liability Loss** caused by the same injurious rendering of, or failure to render, a professional service shall be considered to be caused by one **Occurrence**, regardless of the frequency or repetition thereof or the number of persons or organizations making **Claims** or bringing **Suits**.

"Professional Liability Loss" is defined to mean "loss caused by the rendering of, or failure to render, any professional service by or on behalf of the **Insured**."[1]

The Travelers Policy does not "follow form" to Scholastic's AIG Policy, as you state. Instead, the scope of coverage afforded by the Travelers Policy is governed by its own terms, conditions and exclusions. To the extent the AIG Policy contains provisions that further limit coverage, the Travelers Policy provides coverage that is "no broader than" the AIG Policy, and the narrower provisions in the AIG Policy apply to limit coverage under the Travelers Policy as well. In that regard, the AIG Policy provides professional liability coverage as follows:

---

[1] We note that Scholastic has not explained its basis for seeking coverage under the Travelers Policy for the policy period of February 28, 2010 to February 28, 2011. The AIG Policy limits its professional liability coverage to a "**wrongful act** [that] must first take place during the **policy period** . . . ." (underline added). The AIG Policy further provides that the limits of liability and AIG policy "in effect when the first such **wrongful act** took place after the **first inception date** shall be the only Limit of Liability and the only policy which shall apply." (underline added). The Travelers Policy provides coverage for Professional Liability Loss "caused by an **Occurrence** committed during the **Policy Period**" and further provides that "[a]ll **Professional Liability Loss** caused by the same injurious rendering of, or failure to render, a professional service shall be considered to be caused by one **Occurrence**, regardless of the frequency or repetition thereof . . . ." It is Travelers' understanding that Vanderbilt sought damages for Scholastic's alleged trademark infringement for the period from 2000 to 2015, beginning prior to the 2010-2011 policy period of both the AIG Policy and Travelers Policy. Travelers reserves its rights accordingly.

RIVKIN RADLER LLP

Cort T. Malone
April 19, 2022
Page 3

### A. PROFESSIONAL LIABILITY

**We** will pay amounts **you** are legally required to pay to compensate others for damages as a result of one or more **claims** arising from **your wrongful act** or that of another for whom **you** are legally responsible, including liability **assumed under contract**. The **wrongful act** must first take place during the **policy period** and in the performance of the **multimedia** services provided by the Named Insured and its **subsidiaries**.

Scholastic, as the insured, bears the burden to establish that the amounts paid to settle the Vanderbilt Action for which it seeks coverage fall within the scope of coverage of the Travelers Policy. *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 218 (2002) (holding "it is for the insured to establish coverage and for the insurer to prove that an exclusion in the policy applies to defeat coverage"); *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 2021 N.Y. LEXIS 2519 (N.Y. Nov. 23, 2021) (same). *See also Uvino v. Harleysville Worcester Ins. Co.*, 708 F. App'x 16, 20 (2d Cir. 2017) (holding insured bears burden of both establishing coverage under a policy and identifying covered damages).

At the time of settlement, the only claims remaining in the Vanderbilt Action were for breach of contract based upon Scholastic's alleged failure to pay royalties allegedly due under its License Agreement in connection with sales of Read180 and derivative products, and trademark infringement based upon Scholastic's alleged unauthorized use of Vanderbilt's name and mark in connection with those sales. These claims do not allege loss caused by Scholastic's rendering of services requiring Scholastic's special acumen and training as a professional, as required to trigger coverage as a "professional service". *See Beazley Ins. Co. v. Ace Am. Ins. Co.*, 880 F.3d 64, 71 (2d Cir. 2018) (holding that, where insurance policy does not define "professional services," "the question of whether one is engaged in a professional service depends on whether those individuals acted with the special acumen and training of professionals when they engaged in the acts").

Indeed, in your January 14, 2022 letter to Christopher Newkirk, you acknowledge that "Vanderbilt's claims against Scholastic are <u>not based on Scholastic's publishing business, but rather on Scholastic's retail and online sales</u> of the Read 180 program." (emphasis added). New York courts have repeatedly rejected coverage for claims such as here where the insured is sued for business matters outside of its professional capacity. *See, e.g., Napoli Shkolnik, PLLC v. Greenwich Ins. Co.*, 193 A.D.3d 620, 621 (1st Dep't 2021) (holding that professional liability policy does not cover claim for breach of contract for failure to pay contingency fees because such claim "was premised on actions taken by plaintiff as a business, not in its professional capacity as a law firm"); *Albert J. Schiff Assoc., Inc. v. Flack*, 51 N.Y.2d 692 (1980) (finding no coverage under professional liability policy for general business risk because such risks "are not the professional activities contemplated by this special coverage"); *Tartaglia v. Home Ins. Co.*, 240 A.D.2d 396 (2d Dep't 1997) (holding that professional liability policy does not cover claim alleging that insured attorney devised and implemented a scheme

RIVKIN RADLER LLP

Cort T. Malone
April 19, 2022
Page 4

to defraud his client's creditors); *George Muhlstock & Co. v. Am. Home Assurance Co.,* 117 A.D.2d 117 (1st Dep't 1986) (holding that professional liability policy does not cover claim against insured accountant who was acting as a broker for a commission, even though such relationship may have grown out of the accountant's performance of his usual duties, including tax shelter advice and passing upon whether the transactions involved qualified for the tax relief sought); *see also Societe Generale v. Certain Underwriters at Lloyd's, London,* 1 A.D.3d 164 (1st Dep't 2003) (finding insured not providing professional services where it was acting for its own account).

Moreover, Vanderbilt's breach of contract claim, which seeks damages for unpaid royalties allegedly owed to Vanderbilt under the License Agreement in connection with Scholastic's sale of Read180 and its derivative products, does not seek damages caused by an "occurrence", as defined by the Travelers Policy and required to trigger coverage under the Professional Liability Endorsement. *See, e.g., Women's Integrated Network, Inc. v. U.S. Specialty Ins. Co.,* 2010 U.S. Dist. LEXIS 145818, at *26 (S.D.N.Y. Nov. 30, 2010) (holding that "even in the absence of an express exclusion, courts have held that a claim alleging breach of contract is not covered under a professional liability policy because there is no 'wrongful act' and no 'loss' since the insured is simply being required to pay an amount it agreed to pay" (quoting 23 Appleman on Insurance 2d (Holmes ed. 2003)); *Safian v. Aetna Life Ins. Co.,* 260 A.D. 765 (1st Dep't 1940) (finding no coverage for breach of contract claim under professional liability policy where insured was sued for failure to perform contracted-for medical services and tort claim was dismissed as time-barred).

Further, the Travelers Policy provides "no broader coverage" than the AIG Policy, which also does not provide coverage for breach of contract claims.  As set forth above, the AIG Policy provides coverage for damages arising from Scholastic's "wrongful act", defined by the AIG Policy as follows:

**GG. wrongful act** means any of the following actual or alleged breaches of duty, neglects, errors, misstatements, misleading statements or omissions, including, liability therefor **assumed under contract**[2], constituting:

   a. any form of defamation or other tort related to disparagement or harm to character, reputation, or feelings of any person or organization, including libel, slander, product disparagement, trade libel, infliction of emotional distress, outrage or outrageous conduct;

---

[2] "[**A**]**ssumed under contract**" is defined in the AIG Policy to mean "liability assumed by **you** in the form of hold harmless or indemnity agreements executed with any party, but only as respects **material** provided by **you** in the performance of **multimedia** services; the types of liability **assumed under contract** include hold harmless or indemnity agreements with authors, other book publishers, distributors, retailers, motion picture companies, broadcasters, magazine publishers, or any entities distributing **material**".

RIVKIN RADLER LLP

Cort T. Malone
April 19, 2022
Page 5

      b.   any form of invasion, infringement or interference with rights of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial appropriation of name or likeness;

      c.   false arrest, detention or imprisonment or malicious prosecution;

      d.   wrongful entry or eviction, trespass, eavesdropping or other invasion of the right of private occupancy;

      e.   infringement of title, slogan, trademark, trade name, trade dress, service mark, or service name;

      f.   infringement of copyright, plagiarism, piracy, or misappropriation of ideas under implied contract, or other misappropriation of property rights, ideas or information;

      g.   **unfair competition** alleged in conjunction with subparagraphs e. or f. above;

      h.   a breach of an agreement to maintain the confidentiality of a source or **material** furnished by a source; or

      i.   *prima facie* tort in connection with **material**;

Scholastic's alleged breach of contract in failing to pay royalties allegedly due to Vanderbilt is not a "**wrongful act**" as defined in the AIG Policy, and therefore is not covered under the AIG Policy or the Travelers Policy. *See Granite Outlet, Inc. v. Hartford Cas. Ins. Co.,* 190 F. Supp. 3d 976, 985 (E.D. Cal. 2016) (noting that "a breach of contract claim is generally not covered under professional liability policies because there is 'no wrongful act and no loss since the insured is simply being required to pay an amount it agreed to pay'") (*quoting Health Net, Inc. v. RLI Ins. Co.,* 206 Cal. App. 4th 232 (2012)).

While Vanderbilt alternatively pleads its claim as one for trademark infringement, both claims are based upon the same alleged breach—Scholastic's alleged failure to pay Vanderbilt a royalty in connection with the sale of Read180 and derivative products— so the trademark claim is duplicative of and subsumed by the breach of contract claim. *See Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995) (explaining that a party "seeking compensation for the same injury under different legal theories is of course only entitled to one recovery") (citing *Wickham Contracting Co. v. Board of Educ.,* 715 F.2d 21, 28 (2d Cir.1983)); *Soc'y for the Advancement of Educ., Inc. v. Gannet Co*., 1999 U.S. Dist. LEXIS 700, at *26 (S.D.N.Y. 1999) (explaining that, where parties enter into an agreement governing their respective rights in a trademark, the contract itself defines their rights in the mark and determines the remedies available for an allegedly unauthorized use of the mark) (citing *Affiliated Hosp. Prods., Inc. v. Merdel Game Mfg. Co.,* 513 F.2d 1183 (2d Cir. 1975)); *see also Touro Coll. v.*

RIVKIN RADLER LLP

Cort T. Malone
April 19, 2022
Page 6

*Fondazione Touro Univ. Rome Onlus*, 2017 U.S. Dist. LEXIS 145453, at \*30 (S.D.N.Y. 2017) (holding that infringement claim arising from breach of trademark license agreement sounded in contract only).

Here, the License Agreement clearly contemplated and permitted Scholastic's use of Vanderbilt's name and marks in connection with the advertising and promotion of the licensed software, including any derivative products, so to "preserve[] the identity of the software as a creation of Vanderbilt …". *See* Licensing Agreement §§ 6.4, 7.1, 6.2. In that regard, Vanderbilt did not seek damages from Scholastic for its use of Vanderbilt's trademark in connection with sales of products for which it received a royalty as required by the License Agreement; Vanderbilt sought damages solely for alleged trademark infringement for the sales of products for which Vanderbilt did not receive a royalty, in breach of the License Agreement. As Scholastic's own expert concluded, Vanderbilt's trademark claim seeks damages already accounted for under its breach of contract claim. *See* Expert Rebuttal Report of Laura B Stamm dated September 25, 2021, ¶¶ 11, 42-43, 77.

We note that, even if Vanderbilt's trademark claim is based upon a different breach than its contract claim (which both Travelers and Scholastic deny), Scholastic's own expert opined that Vanderbilt would not be entitled to <u>any</u> damages for its trademark claim. Assuming Vanderbilt was able to establish trademark infringement at trial, Scholastic's expert concluded that Vanderbilt would not be entitled to profits because "there is no evidence that any of the profits can be tied to Defendants' limited use of the Marks"; there was no harm to Vanderbilt's brand; and, at best, Vanderbilt would be entitled to a reasonable royalty limited to $100 per product, for a total of $400, within the limit of the AIG Policy. *Id.* ¶¶ 11-12, 63, 76, 107.

As to Scholastic's claim for reimbursement of defense costs incurred in connection with the Vanderbilt Action that were not paid by AIG, Travelers maintains that any duty to defend that Travelers may have had was triggered, if at all, only "when" the underlying AIG Policy was "exhausted by payment of judgments or settlements" on or about August 26, 2021 and does not include costs incurred (but not paid) prior to August 26, 2021.

As previously advised, Travelers is open to mediating Scholastic's claim for coverage in connection with the Vanderbilt Action. It is Travelers' understanding that the full, uncompromised amount sought by Scholastic from Travelers is approximately $13.5 million of Scholastic's $20 million share of the settlement of the Vanderbilt Action and approximately $880,000 in defense costs incurred from the fourth quarter of 2020 to September 2021. While Scholastic has requested that Travelers make an opening settlement offer, Travelers maintains that negotiations should begin with a reasonable, good faith demand by Scholastic that accounts for Travelers' coverage position as set forth above and Travelers will consider any such demand in good faith. Travelers also requests that you provide any documentation that may be useful to Travelers in assessing such demand.

We look forward to continued dialogue. Please feel free to contact me with any questions.

RIVKIN RADLER  LLP

Cort T. Malone
April 19, 2022
Page 7

Very truly yours,

RIVKIN RADLER LLP

*Joanne M. Engeldrum*

Joanne M. Engeldrum