# ANDERSON KILL P.C.

Attorneys and Counselors at Law

1251 AVENUE OF THE AMERICAS ■ NEW YORK, NY 10020
TELEPHONE: 212-278-1000 ■ FAX: 212-278-1733
www.andersonkill.com

Diana Shafter Gliedman, Esq.
Dgliedman@andersonkill.com
212-278-1036

May 16, 2024

Hon. Jesse M. Furman
United States District Court
Southern District of New York
40 Centre Street, Room 2202
New York, NY 10007
(212) 805-0282

> Re:   *Scholastic Inc. v. St. Paul Fire and Marine Insurance Company*, Case No. 1:23-cv-03485 (S.D.N.Y.);
> Scholastic's Letter-Motion to Compel Production

Dear Judge Furman:

Anderson Kill P.C. represents plaintiff Scholastic Inc. ("Scholastic") in the above-referenced matter. Pursuant to this Court's Individual Practice Rule 3.E, S.D.N.Y. Local Rule 37.2, and Rule 37 of the Federal Rules of Civil Procedure, Scholastic submits this letter motion to respectfully request a discovery conference with the Court regarding St. Paul Fire and Marine Insurance Company's ("Travelers") failure to produce various documents responsive to Scholastic's First Set of Document Demands, attached hereto as Ex. A.

Counsel conferred most recently by phone on May 14, 2024, and were unable to reach an accord. For the reasons set forth below, Scholastic requests that the Court compel Travelers to produce (1) claim file notes created prior to Travelers' coverage denial and (2) non-privileged communications prior to Travelers' coverage denial. A chart of the documents Scholastic is seeking, excerpted from Travelers' privilege log, is attached hereto as Ex. B.

### I.   Travelers Improperly Claims Work Product Protection Before Travelers Denied Coverage on April 19, 2022

Travelers continues to withhold or redact a large class of documents on the grounds that those documents were created in anticipation of litigation and are protected work product, including internal claim analysis notes drafted by Travelers' claim handler, Chris Newkirk ("Newkirk"). These claim notes were created prior to the date that Travelers denied Scholastic's claim, April 19, 2022. *See, e.g.*, Ex. B at PRIV0000142-150, 157, 163. <u>Indeed, Travelers claims work product protection for Newkirk's internal claim notes dating back to November 2020</u> – years before this coverage action began and well before Travelers could have reasonably anticipated litigation. *See id.* at TRAV00002984. Along with internal communications with Travelers personnel and communications between Travelers and its valuation consultant, *see id.* at PRIV0000710, 712, the claim notes were not made in the anticipation of litigation, are not

New York, NY ■ Newark, NJ ■ Philadelphia, PA ■ Washington, DC ■ Stamford, CT ■ Los Angeles, CA ■ Denver, CO ■ Boston, MA

docs-100696555.1

**Anderson Kill P.C.**

Hon. Jesse M. Furman
May 16, 2024
Page 2

protected work product, and must be produced because they were created in the ordinary course of Travelers' business of claims investigation.[1]

Work product protection does not attach to documents created in an insurance company's course of business, which includes claim investigation and analysis. *See AIU Ins. Co. v. TIG Ins. Co.*, No. 07 Civ. 7052(SHS)(HBP), 2008 WL 4067437, at *12 (S.D.N.Y. Aug. 28, 2008). An insurance company generally does not anticipate litigation with its policyholder until it denies coverage for a claim. *See Romann v. Allianz Ins. Co.*, No. 01 Civ. 8236(LTS)(KNF), 2002 WL 31740601, at *3-4 (S.D.N.Y. Dec. 6, 2002). Whether an insurance company anticipated litigation is a fact-sensitive determination, and a reservation of rights letter is "relevant but not dispositive of the date when litigation is anticipated." *In re Residential Cap., LLC*, 575 B.R. 29, 43-44 (Bankr. S.D.N.Y. 2017). Courts consider the language of the reservation of rights letter in the context of an insurance company's conduct. *Compare AIU Ins. Co.*, 2008 WL 4067473, at *13 (not dispositive where insurance company never explicitly denied the claim and continued to investigate); *with Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc.*, No. 96 Civ. 5590(MJL)(HBP), 1998 WL 729735, at *8 (S.D.N.Y. Oct. 16, 1998) (dispositive where insurance company "had clearly taken a position regarding coverage."). Similarly, retention of an attorney to provide a coverage opinion is not dispositive and courts are hesitant to apply the work product doctrine on that basis. *See Otsuka Am., Inc. v. Crum & Forster Specialty Ins. Co.*, No. 650463/2018, 2019 WL 4131024, at *2 (N.Y. Sup. Ct. Aug. 30, 2019).

Travelers asserts that its letter dated July 19, 2021 was a "partial disclaimer and reservation of rights," and that its refusal to directly pay the Vanderbilt settlement implies that Travelers anticipated litigation by August 2021. Ex. C at 2 (May 10, 2024 Travelers letter). But in its July 19, 2021 letter Travelers stated it would "monitor the lawsuit subject to a complete reservation of rights to deny coverage to Scholastic should subsequent information indicate that such action is warranted." Ex. D at 1 (July 19, 2021 Travelers letter) (emphasis added). Further, in response to Scholastic's July 26, 2021 request that Travelers fund the Vanderbilt Settlement, Travelers merely stated that it "will not be making any payment directly to Vanderbilt. We may, at some point in the future, reimburse Scholastic for a portion of its settlement payment to Vanderbilt." Ex. E (Aug. 3, 2021 Travelers emails). Thereafter, Travelers requested documents related to the Vanderbilt Action and expressly maintained that it was still investigating the claim. *See, e.g.*, Ex. F (Aug. 5, 2021 Travelers email) ("We continue to evaluate the reasonableness of Scholastic's settlement with Vanderbilt as well as our obligations in light of it[.]").

Travelers may argue that it denied coverage in its letter dated October 15, 2021. The language of that letter was, at most, a partial disclaimer. *See* ECF No. 28-6. Indeed, in that letter, Travelers specifically acknowledges "some potentially covered damages." *Id.* at 2.

Travelers did not deny coverage until its letter dated April 19, 2022, several months after the Vanderbilt Action settled. *See* Ex. G (April 19, 2022 letter). There, Travelers stated that the claims "do not allege loss caused by Scholastic's rendering of services requiring Scholastic's

---

[1] Other claim notes produced to Scholastic demonstrate that these documents are not legal analysis in anticipation of litigation but, instead, show Travelers engaging in its ordinary business of investigating Scholastic's claim. Thus, the claim notes are not entitled to work product protection. *See* Ex. B at TRAV00002975-2984

**Anderson Kill P.C.**

Hon. Jesse M. Furman
May 16, 2024
Page 3

special acumen and training as a professional, as required to trigger coverage as a 'professional loss'" – a clear denial. *Id.* at 3 Unlike Travelers' previous communications, the April 2022 Letter was drafted by coverage counsel, demonstrating Travelers' anticipation of litigation. Therefore, Scholastic respectfully requests that the Court compel Travelers to produce all documents withheld due to work product protection prior to April 19, 2022.

### II.     Travelers Improperly Asserts Attorney-Client Privilege

Travelers also improperly relies on the attorney-client privilege to withhold communications that did not occur within the context of an attorney-client relationship. For example, internal communications between Travelers personnel or between Travelers and its valuation consultants. *See, e.g.*, Ex. B at PRIV00000097, 01–02.

The attorney-client privilege only attaches "where legal advice of any kind is sought [] from a professional legal advisor in his capacity as such." *Securities and Exchange Commission v. Alderson*, 390 F. Supp. 3d 470, 475-76 (S.D.N.Y. 2019). Application of the attorney-client privilege requires the existence of an attorney-client relationship. *Id.* at 477. A document that reflects an attorney's advice with respect to formulating a coverage position, as opposed to legal advice regarding a coverage litigation, is not privileged. *See Evanston Ins. Co. v. OEA, Inc.*, No. 02 Civ. 1505(DFL)(PAN), 2006 WL 1192737, at *4 (S.D.N.Y. May 4, 2006) (attorney-client communications related to claim investigation and coverage determination were not privileged).

It is apparent that no attorney-client relationship existed between the senders or recipients of these communications. These documents simply show Travelers performing its ordinary business of claims handling and reflect Travelers' evaluation of coverage under the Travelers Policy, which is not protected legal advice and is material to the resolution of this coverage action. *Id.*

Scholastic is unable to assess Travelers' assertions of attorney-client privilege, especially in the context of emails that are not addressed to or sent by an attorney. To that end, should the Court require more information, Scholastic respectfully requests that the Court conduct a limited *in camera* review of those communications not including an attorney that have been withheld based on attorney-client privilege, as identified in Exhibit H.

### III.    Conclusion

For the foregoing reasons, Scholastic asks that the Court compel production of the documents and communications Travelers has improperly withheld or redacted. In the alternative, Scholastic requests that the Court review a limited set of documents *in camera* to assess the purported applicability of the attorney-client privilege.

Respectfully submitted,

*Diana Gliedman*

Diana Shafter Gliedman

docs-100696555.1