IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCHOLASTIC, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil No. 1:23-cv-3485-JMF |
| | ) |
| ST. PAUL FIRE AND MARINE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT ST. PAUL FIRE AND MARINE INSURANCE COMPANY'S
## <u>NOTICE OF APPEAL</u>

Notice is hereby given that St. Paul Fire and Marine Insurance Company ("Travelers"), Defendant in the above-named case, hereby appeals to the United States Court of Appeals for the Second Circuit from the attached Order and Final Judgment, awarding a money judgment against Travelers and in favor of Plaintiff Scholastic, Inc., in the amount of $19,498,298.04, plus post-judgment interest, entered September 25, 2025.

                Respectfully submitted,

                <u>*/s/ Joanne M. Engeldrum*</u>
                Joanne M. Engeldrum, Esq.
                RIVKIN RADLER LLP
                926 RXR Plaza
                Uniondale, NY  11556-0926
                (516) 357-3000
                Joanne.engeldrum@rivkin.com

                *Attorneys for Defendant*
                *St. Paul Fire and Marine Insurance Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCHOLASTIC INC.<br><br>Plaintiff,<br><br>vs.<br><br>ST. PAUL FIRE AND MARINE INSURANCE COMPANY,<br><br>Defendant. | Case No. 1:23-cv-03485-JMF<br><br>**[PROPOSED] ORDER AND FINAL JUDGMENT** |

**THIS MATTER** having come before the Court by Plaintiff Scholastic Inc.'s ("Scholastic") and Defendant St. Paul Fire and Marine Insurance Company's ("Travelers") cross-motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Cross-Motions"); and the Court having considered the papers submitted in support of and in opposition to the Cross-Motions; and for good cause shown, it is hereby

**ORDERED, ADJUDGED, and DECREED** that the Cross-Motions are both **GRANTED** in part, and **DENIED** in part.

**ORDERED, ADJUDGED, and DECREED** that Travelers must reimburse Scholastic for all the outstanding defense costs and settlement amounts Scholastic incurred in connection with the litigation styled *Vanderbilt University v. Scholastic, Inc., et al*, Civil Action No. 3:18-cv-0046, plus pre- and post-judgment interest pursuant to CPLR §§ 5001-5004.

**IT IS FURTHER ORDERED, ADJUDGED, and DECREED** that Scholastic is hereby awarded a money judgment against Travelers in the sum of (i) $14,254,283.74; (ii) plus the statutory pre-judgment interest of nine (9) per centum per annum on the amount of $14,254,283.74, pursuant to CPLR §§ 5001, 5004, to be computed from August 26, 2021[1] through the date of judgment, in the amount of $ 5,244,014.30 ; and (iii) plus the post-judgment interest at the federal rate under 28 U.S.C. § 1961 on the amount of $14,254,283.74, pursuant to CPLR § 5002, to be computed from the date of judgment until payment.  For a total money judgment against Travelers, including pre-judgment interest to the date of entry of this Judgment, in the amount of $ 19,498,298.04 , plus post-judgment interest.

**IT IS FURTHER ORDERED, ADJUDGED, and DECREED** that all remaining claims in this action are hereby **DISMISSED** with prejudice.

---

[1] August 26, 2021 is the date upon which the underlying AIG Policy exhausted, and triggered Travelers' obligation to cover Scholastic.

This constitutes the Order and Final Judgment of the Court.

**IT IS SO ORDERED AND ENTERED:**



_____
**H**
**U**

Judgment entered this  25   day of September , 2025

_____
**Clerk**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
SCHOLASTIC INC.,                                                  :
:
                                    Plaintiff,                    :
:                            23-CV-3485 (JMF)
                -v-                                               :
:                            OPINION AND ORDER
ST. PAUL FIRE AND MARINE INSURANCE                                :
COMPANY,                                                          :
:
                                    Defendant.                    :
:
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       In this case, Plaintiffs Scholastic Inc. ("Scholastic") seeks a declaration that Defendant St. Paul Fire and Marine Insurance Company ("Travelers") is obliged to cover costs it incurred in connection with litigation brought by Vanderbilt University ("Vanderbilt"). Scholastic and Vanderbilt settled that litigation following summary judgment, when two claims remained, one for breach of contract and one for trademark infringement. Scholastic sought, and obtained, coverage for a portion of its defense costs and a portion of the settlement costs from its primary insurer. Because those costs exceeded the policy limits under the primary insurance policy, Scholastic turned to Travelers, which provided excess insurance to reimburse the balance. Travelers declined and this lawsuit followed. Now pending are cross-motions, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. *See* ECF Nos. 99, 140. Also pending are dueling motions to exclude expert opinions and testimony under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and Rule 702 of the Federal Rules of Evidence. *See* ECF Nos. 105, 113. For the reasons that follow, the Court concludes that Scholastic is entitled to coverage of both its defense costs and its settlement costs but is not entitled to consequential

damages. Accordingly, each summary judgment motion is GRANTED in part and DENIED in part. In light of those rulings, the Court need not and does not resolve the parties' motions to exclude, which are therefore DENIED as moot.

## BACKGROUND

The relevant facts — taken from the admissible materials submitted by the parties in connection with their motions — are either undisputed or described in the light most favorable to Travelers. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

**A. The License Agreement and the Vanderbilt Action**

In 1997, Vanderbilt licensed computer software that it had designed to promote middle school literacy to Scholastic pursuant to a written agreement (the "License Agreement"). *See* ECF No. 112 ("Def.'s SOMF"), ¶¶ 1-5; *see also* ECF No. 142-3 ("License Agreement"). In exchange for royalties, Vanderbilt granted Scholastic an exclusive license to modify the software and develop, produce, manufacture, replicate, market, sell, package and otherwise distribute "world-wide without restriction" the software as modified and other products based on or derived from the software. Def.'s SOMF ¶¶ 5-9. The License Agreement also permitted Scholastic to use Vanderbilt's marks "subject to Vanderbilt's approval, not to be unreasonably withheld." *Id.* ¶ 13. In 2018, following an audit, Vanderbilt sued Scholastic and other defendants in United States District Court for the Middle District of Tennessee alleging that Scholastic had improperly used its intellectual property to develop a product called Read 180 and other products derived from Read 180 — System 44, FASTT Math, MATH 180, iRead, and Expert 21, and Score It (collectively, the "Other Products") — without paying royalties under the License Agreement. *See* ECF No. 142-4 ("Vanderbilt Complaint"), at 21-34.

2

Following a motion to dismiss, Vanderbilt pressed four claims against Scholastic: Breach of Contract in Violation of New York Law (Count I); Declaratory Judgment of Ownership Interest in the Ancillary Products (Count II); Infringement of Federally Registered Trademarks (Count III); and Tortious Interference with Contract in Violation of Tennessee Law (Count IV). Def.'s SOMF ¶ 36. At the conclusion of discovery, Scholastic moved for summary judgment on all of Vanderbilt's claims. See Def.'s SOMF ¶ 47. On May 26, 2021, the Tennessee court granted Scholastic's motion for summary judgment in part and dismissed all but two of Vanderbilt's claims against Scholastic: the trademark infringement claim and the breach of contract claim. See id. ¶¶ 56-62. With respect to the trademark infringement claim, the court found that there was evidence of confusion between Vanderbilt's trademarks and marks used by Scholastic in connection with its education materials. See ECF No. 127-23 ("Vanderbilt MSJ Op."), at 28-29. With respect to the breach of contract claim, the district court concluded that Scholastic owed royalties for its Read 180 product in an amount to be determined at trial. Vanderbilt MSJ Op. 25 & n.9. Two months after the district court's summary judgment opinion, Vanderbilt and Scholastic reached a settlement. See ECF No. 148, ¶ 84.

**B. Scholastic's Insurance Coverage**

At the time of these events, Scholastic was insured under two professional liability insurance contracts — one with its primary liability insurer, Illinois National Insurance Company ("AIG"), and the other with its excess insurer, Travelers. The AIG policy (the "AIG Policy") covered Scholastic for amounts it was legally obligated to pay "to compensate others for damages as a result of" an enumerated "wrongful act" that took place in the performance of Scholastic's multimedia services. Def.'s SOMF ¶¶ 87-88. "Wrongful act" is defined, in turn, to include Scholastic's "infringement of . . . trademark" and "misappropriation of property rights,

3

ideas, or information." *See id.* ¶ 90.  And the covered multimedia services include both publishing and advertising.  *See* ECF No. 28-1 ("AIG Policy"), at 16-17.  Significantly, the AIG Policy included a monetary limit that was eroded by payment of judgments, settlements, and defense costs.  *Id.* ¶ 87.  The AIG Policy also provided a "duty to defend a covered claim brought against [Scholastic]" that would "end[] after the applicable Limit of Liability has been exhausted." *Id.* ¶ 89.

The Travelers policy (the "Travelers Policy") provided umbrella coverage above the primary AIG Policy.  Subject to its terms, conditions and exclusions, the Travelers Policy provided professional liability coverage for sums in excess of the AIG Policy limit that Scholastic became legally obligated to pay as damages by reason of liability imposed by law because of loss caused by its rendering or failure to render "any professional service," *id.* ¶ 98, a term that was left undefined in the Policy.  Significantly, the Travelers Policy provides that Travelers would provide "no broader coverage" than the AIG Policy. *Id.* ¶ 96.  It further provides a "duty to assume control of the defense of any Claim or Suit seeking damages covered by this policy . . . when the [AIG Policy limit] has been exhausted by payment of judgments or settlements that would be covered by this policy." *Id.* ¶¶ 96-101 (alteration in original).  It states that the AIG Policy's limit "shall not, for the purpose of determining when this policy applies, be reduced or exhausted by any payment . . . [of] damages which are not covered by [the Travelers Policy]." *Id.* ¶ 99.

## C. Scholastic's Claims for Coverage

Shortly after Vanderbilt initiated the Vanderbilt Action, Scholastic tendered a claim for coverage to AIG. *Id.* ¶ 102.  AIG concluded that the claims brought in the Vanderbilt Action alleged "wrongful acts" that were covered by the AIG Policy. *See* ECF No. 157 ("Def.'s Opp'n

4

to Pl.'s SOMF"), ¶ 60.  As of July 2021, when Vanderbilt and Scholastic reached their settlement, AIG had paid the vast majority — though not all — of Scholastic's defense costs.  *Id.* ¶ 61.  AIG paid the remaining balance of its policy limit to Scholastic to indemnify it for the settlement itself.  *See* Def.'s SOMF ¶ 119; Def.'s Opp'n to Pl.'s SOMF ¶¶ 60-62.  Scholastic then turned to Travelers to pay the balance — both the defense costs that it had incurred that AIG had not paid and the balance of its settlement costs.  Def.'s Opp'n to Pl.'s SOMF ¶ 63.  After investigating Scholastic's claim, Travelers denied coverage, arguing that it had no obligation to defend or indemnify Scholastic.  *See* Def.'s SOMF ¶ 115.

### D. This Lawsuit

This lawsuit followed.  In its Complaint, Scholastic seeks a declaratory judgment that Travelers has a duty to defend and indemnify Scholastic for its remaining losses from the Vanderbilt Action, including the defense costs that AIG did not pay and the balance of its settlement costs.  ECF No. 28 ("Complaint"), at Prayer for Relief ¶¶ 1-2.  Scholastic also brings a claim for breach of contract and/or the duty of good faith and fair dealing, in connection with which it seeks both actual and consequential damages.  *Id.* ¶ 79 & Prayer for Relief ¶ 3.  Earlier in the litigation, Travelers filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  *See* ECF No. 65.  As relevant here, Travelers argued that the losses due to Vanderbilt's trademark infringement claim were not covered under the Travelers Policy because the claim was based on Scholastic's "fail[ure] to obtain Vanderbilt's permission before using Vanderbilt's Trademarks in its *advertising and marketing materials* . . . 'in order to enrich [itself]'" and that advertising and marketing products is not "a 'professional service' [that] requires the use of the special acumen and training of a professional in performing a service for another."  ECF No. 67 ("Def.'s Rule 12(c) Mem."), at 14-15.  And Travelers argued

5

that the losses due to Vanderbilt's contract claim were not covered under the Travelers Policy both because breach of contract is not a "wrongful act" covered by the AIG Policy (and thus is necessarily not covered by the Travelers Policy given the "no broader coverage" clause in the Travelers Policy) and because, as a matter of law, a breach of contract cannot be covered under professional liability insurance policies. *See id.* at 8-12.

The Court rejected these arguments in an oral ruling delivered on July 2, 2024. *See* ECF No. 142-14 ("Rule 12(c) Op.").[1] With respect to the trademark infringement claim, the Court reasoned that Travelers's argument "mischaracterize[d] Vanderbilt's allegations in the underlying action." *Id.* at 3. Count III of the complaint in the Vanderbilt Action, the Court continued, "describe[d] the allegedly infringing conduct as the 'unauthorized advertisement, promotion, display, offering for sale, sale, and distribution of Scholastic's goods and services bearing Vanderbilt's Marks.' Thus, the allegations [did] not rest exclusively on Scholastic's advertising and marketing activities; instead, they [were] directed at a core 'professional service' undertaken by Scholastic, including developing, publishing, and, of course, selling educational products." *Id.* at 3-4 (citations omitted). The Court acknowledged that Travelers's arguments as to the breach of contract claim had "more force," but it found them wanting too. *Id.* at 4. New York law, the Court explained, did "not support the categorical rule pressed by [Travelers]"; *id.* at 5, instead, "a claim may be insurable, even if pleaded as a breach of contract, if the alleged breach is 'occasioned by' conduct that falls within the scope of the relevant policy." *Id.* Based on the allegations in Scholastic's Complaint, the Court concluded that the breach alleged by Scholastic was at least "arguably" insurable under the Travelers Policy because it "was premised

---

[1] Citations to the Court's ruling are to the transcript pages.

on the alleged infringement" — i.e., misappropriation — "as opposed to simple failure to pay." *Id.* at 8.

Following the completion of discovery, the parties filed the instant cross-motions for summary judgment and motions to exclude experts, all of which are now ripe for decision.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

Where both sides move for summary judgment, as here, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). "[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id*. (internal

quotation marks omitted). To defeat a summary judgment motion, the non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

The parties agree that New York law governs the Travelers Policy. *See* ECF No. 131 ("Def.'s Mem."), at 14; ECF No. 141 ("Pl.'s. Mem."), at 10; *see also Cargill, Inc. v. Charles Kowsky Res., Inc.*, 949 F.2d 51, 55 (2d Cir. 1991) (stating that "New York courts generally defer to the choice of law made by the parties to a contract"). "Under New York law, contracts of insurance are strictly construed in favor of the insured and against the insurer." *U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256 F. Supp. 2d 176, 180 (S.D.N.Y. 2003). "When construing insurance policies, the language of the contracts must be interpreted according to common speech and consistent with the reasonable expectation of the average insured." *In re Viking Pump, Inc.*, 52 N.E.3d 1144, 1151 (N.Y. 2016) (internal quotation marks omitted); *see also Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88, 90 (2d Cir. 2009) ("Under New York law, an insurance contract must be interpreted so that a clear and unambiguous policy provision is given its plain and ordinary meaning."). Any "[a]mbiguities in an insurance policy are to be construed against the insurer." *Dean v. Tower Ins. Co. of New York*, 979 N.E.2d 1143, 1145 (N.Y. 2012) (internal quotation marks omitted); *see also Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 698 (2d Cir. 1998) ("[I]t is fundamental that

8

ambiguities in an insurance policy must be construed against the insurer." (internal quotation marks omitted)).

## DISCUSSION

Scholastic argues that Travelers is obligated under the Travelers Policy to pay the balance of its defense and settlement costs for the Vanderbilt Action. Scholastic also seeks consequential damages, alleging that Travelers breached its duty of good faith and fair dealing. The Court will address each issue in turn, beginning with the costs of the settlement with Vanderbilt.

**A. Settlement Costs**

The Court begins with whether Travelers is obligated to pay the portion of the settlement with Vanderbilt that AIG did not cover. Under New York law, an insurer's "duty to indemnify requires a covered loss." *Servidone Constr. Corp. v. Security Ins. Co. of Hartford*, 64 N.Y.2d 419, 425 (1985). The insured has the burden to prove in the first instance that a loss falls within the scope of the policy's coverage. *See, e.g., Ment Bros. Iron Works Co., Inc. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 121 (2d Cir. 2012). As relevant here, "[a] liability insurer's duty to indemnify its insured does not depend on whether the insured settles or loses the case." *K2 Inv. Grp., LLC v. Am. Guarantee & Liab. Ins. Co.*, 6 N.E.3d 1117, 1119 (N.Y. 2014). Moreover, an insured seeking coverage for the settlement of a claim need not prove actual liability of that underlying claim; it must merely demonstrate that the settled claim constitutes a covered loss. *See Servidone Const. Corp.*, 64 N.Y.2d at 425 ("The duty to indemnify requires a covered loss, but it should be apparent that a plenary trial of the issue is not always necessary.").

The Court concludes that the entire settlement amount for the Vanderbilt Action is a covered loss falling within the scope of the Travelers Policy.[2]  Notably, in arguing otherwise, Travelers largely rehashes arguments that it made in its motion for judgment on the pleadings — arguments the Court already considered and rejected.  First, Travelers contends, as it did before, that the settlement of Vanderbilt's claims is not covered because the losses were not "caused by the rendering of, or failure to render, any professional service by or on behalf of [Scholastic]."  Def.'s SOMF ¶¶ 96-97; *see* Def.'s Mem. 18-19, 20-22; *see also* Def.'s Rule 12(c) Mem. 12-13.  The Travelers Policy does not provide a definition for "professional services," but under New York law the phrase means services requiring "special acumen and training."  *Beazley Ins. Co., Inc. v. ACE Am. Ins. Co.*, 880 F.3d 64, 71 (2d Cir. 2018); *see also Albert J. Schiff Assocs., Inc. v. Flack*, 417 N.E.2d 84, 88 (N.Y. 1980) ("An errors and omissions policy is intended to insure a member of a designated calling against liability arising out of the mistakes inherent in the practice of that particular profession or business.").  Here, despite Travelers's claims to the contrary, Vanderbilt's allegations did not rest exclusively on Scholastic's advertising and marketing activities; instead, as the Court previously concluded, they were "directed at a core 'professional service' undertaken by Scholastic, including developing, publishing, and, of course, selling educational products," namely, the design, publication, and sale of its various educational technology products — Read 180, FASTT Math, System 44, iRead, and Math 180.  Rule 12(c) Op. 5.  Nor, as Travelers now contends, *see* Def.'s Mem. 21-22, does the fact that Scholastic may have used Vanderbilt's marks on its own products defeat its entitlement to

---

[2]    For that reason, the Court need not and does not resolve the parties' disputes over how the settlement should be allocated as between the trademark infringement claim and the breach of contract claim.  *Compare* Def.'s Mem. 23, *with* Pl.'s Mem. 31.  Nor does the Court need to resolve each side's motions to preclude the other side's experts.  *See* ECF Nos. 105, 113.

coverage, *see, e.g.*, *Beazley*, 880 F.3d at 71-72 (holding that a securities fraud claim based on alleged misstatements in the defendant company's own advertising materials nevertheless arose out of the company's provision of professional services, not from its general advertising activities).

Second, Travelers also reprises its arguments that an insured cannot, as a matter of law, get coverage for losses due to a breach of contract and that breach of contract is not a "wrongful act" within the meaning of the AIG Policy (and, thus, not covered under the Traveler Policy given its "no broader coverage" clause). *See* Def.'s Mem. 15-20; *see also* Def.'s Rule 12(c) Mem. 8-12. But neither the AIG Policy nor the Travelers Policy explicitly excludes coverage for breach of contract. And as the Court previously ruled, New York law is not as categorical as Travelers suggests. Instead, "a claim may be insurable, even if pleaded as a breach of contract, if the alleged breach is 'occasioned by' conduct that falls within the scope of the relevant policy. Put differently: 'It is not the form of the pleading which determines coverage . . . , it is the nature of the insured's conduct . . . .'" Rule 12(c) Op. 5-6 (quoting first *Wentworth Grp. Inc. v. Evanston Ins. Co.*, 2021 WL 2828838, at *8 (S.D.N.Y. July 8, 2021), then *Touchette Corp. v. Merchants Mut. Ins. Co.*, 429 N.Y.S.2d 952, 954 (App. Div. 4th Dep't 1980)). Here, Vanderbilt's breach of contract claim was not premised on Scholastic's mere failure to pay an agreed upon amount; instead, it was premised on a separate act — namely, Scholastic's purported misappropriation of Vanderbilt's intellectual property. In other words, Vanderbilt would have been entitled to relief even if the License Agreement did not exist. And not for

11

nothing, the AIG Policy *expressly* defines "wrongful acts" to include "misappropriation of ideas" and "misappropriation of property rights, ideas, or information." Def.'s SOMF ¶ 90.³

In arguing otherwise, Travelers contends that any damages owed by Scholastic could not be due to "misappropriation" within the meaning of the AIG Policy because, through the License Agreement, it had an exclusive license to use Vanderbilt's intellectual property. Def.'s Reply 16-17. But, at bottom, that contention is just another version of Travelers's principal argument that Scholastic could not recover for losses caused by a breach of contract as a categorical matter. Moreover, it does not follow from the fact that Scholastic and Vanderbilt had a contractual relationship that Vanderbilt's claim could not sound in misappropriation. In point of fact, under New York law, the existence of a contractual relationship is one way to satisfy an essential element of a misappropriation claim. *See, e.g.*, *Turner v. Temptu, Inc.*, 586 Fed. App'x 718, 721-22 (2d Cir. 2014) (summary order); *McGhan v. Ebersol*, 608 F. Supp. 277, 284 (S.D.N.Y. 1985). And ultimately, to the extent there is any uncertainty as to the meaning of "misappropriation" in the AIG Policy and whether it would encompass Vanderbilt's contract claim, the ambiguity must be construed in favor of providing insurance to Scholastic. *See, e.g.*, *Haber*, 137 F.3d at 698.

---

³ In its reply, Travelers tries to get around this Court's earlier ruling by noting that it "was based on the pleadings, not the complete factual record currently before the Court." ECF No. 165 ("Def.'s Reply"), at 15. True enough, but Travelers identifies nothing in the record that would affect the Court's conclusions. The only piece of evidence to which it points is the License Agreement, *see id.* at 15-16, but — putting aside whether the Court could have considered the License Agreement as integral to the pleadings in connection with the earlier motion — Travelers fails to explain what difference the License Agreement makes to the analysis.

12

In sum, the Court concludes that both of the settled claims in the Vanderbilt Action are covered losses and, therefore, that Travelers must pay the balance of the settlement amount owed by Scholastic.

**B. Defense Costs**

As noted, Scholastic also argues that Travelers is obligated to pay the balance of the defense costs it incurred in defending the Vanderbilt Action. "[A]n insurer's duty to defend presents a question of law appropriate for resolution by summary judgment." *Wausau Underwriters Ins. Co. v. QBE Ins. Corp.*, 496 F.Supp.2d 357, 360 (S.D.N.Y. 2007). "Under New York law, a primary insurer has the primary duty to defend on behalf of its insured without the right to contribution from an excess insurer." *Barber v. RLI Ins. Co.*, No. 06-CV-630 (FJS) (RFT), 2008 WL 5423106, at *2 (N.D.N.Y. Dec. 24, 2008); *see Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 265 (2011) ("A primary insurer . . . generally has no entitlement to contribution from an excess insurer." (internal quotation marks omitted)). "Excess liability policies," like the Travelers Policy at issue here, "provide an additional layer of coverage for losses that exceed the limits of a primary liability policy," and "[c]overage under an excess policy . . . is triggered when the liability limits of the underlying primary insurance policy have been exhausted." *Ali v. Fed. Ins. Co.*, 719 F.3d 83, 90 (2d Cir. 2013).

Travelers's principal argument against Scholastic's claim for its defense costs — that the losses due to Vanderbilt's claims were not covered under the Travelers Policy — fails for the reasons discussed above.[4] But Travelers separately argues that it has no obligation to reimburse Scholastic because the defense costs were incurred prior to August 25, 2021, when AIG's policy

---

[4]  On top of that, the argument ignores the fact that some of Scholastic's defense costs were attributable to claims that were dismissed during the course of the Vanderbilt Action, including an explicit claim of misappropriation. Def.'s SOMF ¶ 57.

13

limit was exhausted. Def.'s Mem. 25. The Court concludes otherwise. First, it would make little sense to conclude that Travelers is required to pay the balance of the settlement but not the balance of Scholastic's defense costs when, in theory, AIG could have allocated its payment in the first instance to Scholastic's defense costs and then to the settlement — and the balance of unpaid costs would have been the same. *See, e.g.*, *Carrier Corp. v. Allstate Ins. Co.*, 113 N.Y.S.3d 472, at *5 (N.Y. Sup. Ct. 2018) (table) ("An excess insurer may not challenge the propriety of a primary insurer's payment or allocation decisions absent collusion to defraud the excess insurer."). Second, per the Travelers Policy's terms, Travelers agreed to "continue in force as underlying insurance" "in the event of exhaustion of the limits of the Scheduled Underlying Insurance or the Scheduled Retained Limit." ECF No. 28-3 ("Travelers Policy"), at 16. Such language indicates that "[the excess policy] coverage begins where the responsibility of the primary policy ends." *Allstate Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 83-CV-3198 (PNL), 1984 WL 1969, at *1 (S.D.N.Y. Nov. 30, 1984) (Leval, J.); *see also Danaher Corp. v. Travelers Indem. Co.*, 414 F. Supp. 3d 436, 455 (S.D.N.Y. 2019) ("[The excess insurer] now sits in the position of a primary insurer of the risks of loss stemming from the Underlying Claims[.]"). *But see Schneider Nat. Transp. v. Ford Motor Co.*, 280 F.3d 532, 539 (5th Cir. 2002) (holding that, under Texas law, an insurer has "no obligation to pay for costs and expenses incurred until after the payout of the first settlement"). Accordingly, when, on August 21, 2021, the AIG Policy was exhausted, Travelers stepped into AIG's shoes and became responsible for any losses covered by the AIG Policy that also fell within the scope of the Travelers Policy, which included the outstanding defense costs.

Travelers's attempts to avoid this conclusion are unavailing. Put simply, it fails to identify any language in the Travelers Policy suggesting that its coverage is limited only to the

14

losses that Scholastic incurred before the date that the primary policy is exhausted. Construing the Policy to exclude defense costs incurred prior to exhaustion of the AIG Policy, notwithstanding the "continue in force" provision, would lead to a "[s]trained and unnatural reading[]" of the policy terms, which courts strive to avoid. *See, e.g., 1070 Park Ave. Corp. v. Fireman's Fund Ins. Co.*, 313 F. Supp. 3d 528, 538 (S.D.N.Y. 2018). Nor does Travelers cite any authority suggesting that the specific date that an insurance policy is exhausted, without more, affects the amount of losses that an excess insurer must cover. The only relevant dates are those that define the policy period, and neither party disputes that the unpaid defense costs arose from actions that took place during that period. In any event, even if Travelers's reading of the Policy were reasonable, the terms would be ambiguous at best. And, as noted, the Court must construe any ambiguity in Scholastic's favor. *See, e.g., Haber*, 137 F.3d at 698; *cf. E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, No. 82-CV-7327 (VLB), 1992 WL 133899, at *8 (S.D.N.Y. Apr. 21, 1992) ("[W]here a clause in an [excess insurer's] policy provides that coverage 'shall apply as underlying insurance, notwithstanding anything to the contrary in the terms and conditions of this policy,' no prohibition on liability for legal defense costs in that policy shall be applicable where the conditions for applicability of the quoted clause are met.").

In short, the Court concludes that Travelers must cover all remaining defense costs even though Scholastic incurred such costs prior to August 25, 2021.

## C.  Consequential Damages

By contrast, the Court concludes Scholastic's request for "consequential damages" fails as a matter of law. First, Scholastic fails to identify any damages to which it would be entitled

other than its actual damages, namely the balance of its defense and settlement costs.[5]  Second, to the extent that the request for consequential damages is tethered to a claim that Travelers breached the implied covenant of good faith and fair dealing, *see* Complaint ¶¶ 73-76, that claim is duplicative of Scholastic's claim for breach of contract.  *See, e.g.*, *Henderson v. Physician Affiliate Grp. of New York P.C.*, No. 18-CV-3430 (JMF), 2019 WL 3778504, at *7 (S.D.N.Y. Aug. 12, 2019) ("An implied-covenant claim can survive a motion to dismiss only if it is based on allegations different than those underlying the accompanying breach of contract claim and the relief sought is not intrinsically tied to the damages allegedly resulting from the breach of contract." (internal quotation marks omitted)).  Third, and in any event, Scholastic points to no evidence that Travelers breached its duty of good faith and fair dealing; that it sustained damages as a result of such a breach; or that those damages were contemplated by Travelers and Scholastic when the Travelers Policy was issued.  *See, e.g.*, *Goldmark, Inc. v. Catlin Syndicate Ltd.*, No. 09-CV-3876 (RRM) (RER), 2011 WL 743568, at *3 (E.D.N.Y. Feb. 24, 2011) (citing cases).  In arguing otherwise, Scholastic merely asserts in conclusory fashion that "fact issues remain as to whether Travelers' failure to properly adjust Scholastic's claim is a breach of the covenant of good faith and fair dealing." ECF No. 145, at 40.  But that is not enough to withstand summary judgment.  Accordingly, Travelers's motion for summary judgment on Scholastic's claim for consequential damages must be and is granted.

## CONCLUSION

For the foregoing reasons, the Court concludes that Travelers must pay both the outstanding defense and settlement costs that Scholastic incurred in connection with the

---

[5]  The Court previously dismissed Scholastic's request to recover its fees in this litigation.  *See* ECF No. 36, at 2-3.

16

Vanderbilt Action but is not liable for any consequential damages.  Accordingly, Scholastic's motion for summary judgment is GRANTED in part and DENIED in part, as is Travelers's cross-motion.  In light of those rulings, the parties' motions to exclude are DENIED as moot.

Scholastic shall confer with Travelers and, **within one week of the date of this Opinion and Order**, file a proposed judgment consistent with this Opinion and Order.

The Clerk of Court is directed to terminate ECF Nos. 99, 100, 105, 113, and 140.

SO ORDERED.

Dated: September 15, 2025
       New York, New York